```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| BARRY SPENCER II,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, OFFICER ZANOLI,<br>OFFICER COLBY, and SUPERVISOR<br>DANIEL C. KEANE<br><br>    Defendants. | No. 15-cv-10634-IT |

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DKT. NO. 45

CABELL, U.S.M.J.

Following a police stop he contends was unlawful, the plaintiff brought suit against various Boston Police Department officers and the City of Boston (the "City"). The presiding District Judge agreed with this court that the original complaint as framed failed to plead viable claims against the City and one of the officers, Sergeant Keane, and granted their motion to dismiss.[1] (Dkt. No. 43). The plaintiff now seeks leave to amend the complaint to cure the noted deficiencies, and to add the present Boston mayor and police commissioner as defendants. The

---

[1] The reader is referred to this court's Report and Recommendation on the defendants' motion to dismiss for a more complete discussion of the issues. (Dkt. Nos. 35, 37).

defendants oppose the motion.[2]  (Dkt. No. 45-1, 49).  The matter has been referred to this court for consideration.  For the reasons explained below, I find that the proposed amended complaint fails to state a valid claim for relief against the present or prospective defendants, and recommend therefore that the motion for leave to amend be denied.

I. **RELEVANT BACKGROUND**

   A. **The Original Complaint**

The original complaint alleged that BPD Officers Zanoli and Colby seized, searched, and arrested the plaintiff without probable cause because he is African-American.  (Compl. ¶¶ 5, 7-8).  The complaint asserted claims against those two officers as well as the moving defendants, Sergeant Keane and the City.

With respect to the moving defendants, this court construed the complaint as alleging a section 1983 claim against Sergeant Keane for approving a police report knowing it to reflect unconstitutional conduct on the part of Officers Zanoli and Colby. The District Judge agreed that the complaint failed to assert a viable claim against Sergeant Keane because no facts were alleged to suggest that he encouraged his subordinates to file improper

---

[2] Two of the defendants in the original complaint, BPD Officers Zanoli and Colby, did not move to dismiss the original complaint and do not oppose the present motion for leave as it relates to them.  Accordingly, the court recommends that the motion for leave to amend be allowed as it relates to BPD Officers Zanoli and Colby and omits from discussion any claims relating to them.

incident reports or that he knew or should have known that the incident report filed was deficient in any respect. (Dkt. No. 43).

With respect to the City, the court construed the complaint as alleging four claims. First, it alleged a claim of a policy of racial profiling in violation of 42 U.S.C. § 1983. The District Judge agreed that this claim failed because there were no "non-conclusory" facts alleged to show the City had a policy or custom of racial profiling. (Id.). The complaint also alleged common law negligence, a violation of the Massachusetts Civil Rights Act, and arguably a claim for civil conspiracy, but the District Judge agreed that each of these claims failed easily for various reasons.

B. **The Proposed Amended Complaint**

The proposed amended complaint abandons the state statutory and common law claims and focuses on asserting claims under section 1983. At core, the plaintiff seeks to resurrect his contention that he was stopped pursuant to a City policy or practice of racial profiling, and on that basis raises various 1983 based claims against the original defendants and two new defendants, including Martin Walsh in his capacity as the Mayor of Boston, and William Evans in his capacity as the Boston Police Commissioner. (Am. Compl. ¶¶ 6-10). As with the original complaint, the proposed complaint is not always a model of clarity and it is not always clear whether a particular paragraph is meant to serve as narrative or articulate a specific cause of action.

3

Ostensibly, the proposed complaint raises three specific claims. It asserts a "CLAIM FOR RELIEF" followed by "COUNT 2" and "COUNT 3," but the first so-called claim consists of a 60-paragraph narrative that does not really ever articulate a specific claim, and instead makes varied allegations of unlawful conduct by Officers Zanoli and Colby, Sergeant Keane, Mayor Walsh, Commissioner Evans, and the City of Boston. Making best efforts to identify the most plausible claims in light of the specific wording used and the nature of the narrative, the court construes the proposed amended complaint as follows.

First, within the "Claim for Relief" section, the complaint arguably alleges: (a) a section 1983 claim against Officers Zanoli and Colby arising from their stop of the plaintiff (Id. at ¶¶ 34-60); (b) a section 1983 claim against Sergeant Keane for being aware of but failing to stop or supervise his subordinates' unlawful conduct; and (c) a section 1983 claim against the City, the Mayor and the Police Commissioner for having a policy, custom, or practice of racial profiling.

Count 2 alleges a section 1983 claim against the City, the Mayor and the Police Commissioner for failing to train, supervise or discipline the City's police officers.

Finally, Count 3 alleges that the City, the Mayor and the Police Commissioner violated the plaintiff's Fourth and Fourteenth Amendment rights.[3]

## II. LEGAL STANDARD

A party seeking to amend a complaint more than 21 days after "service of a responsive pleading or . . . motion under Rule 12(b), (e), or (f)" must seek leave of court to do so. Fed. R. Civ. P. 15(a). The Court's task is to determine whether "justice … requires" that leave to amend be granted, a determination that requires the Court to "examine the totality of the circumstances and to exercise its informed discretion in construing a balance of pertinent considerations." *Id; Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006). "Reasons for denying leave [to amend] include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is

---

[3] The defendants construe the proposed complaint a little differently, but similarly view it as generally raising section 1983 based claims arising from the City's alleged policy or practice of racial profiling. The defendants argue that the proposed complaint fails to assert viable claims against the City because it fails to allege facts to show a specific municipal policy, custom or practice of racial profiling, and fails to allege facts sufficient to show that the plaintiff's arrest was the product of a more widespread custom or policy of failing to supervise. They argue that the complaint fails to state valid claims against Sergeant Keane, the Mayor or the Police Commissioner because it fails to allege any facts to show that any defendant engaged in any affirmative conduct that caused harm to the plaintiff.

5

considered futile where the amended complaint would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006); *see also Crowl v. M. Chin Realty Trust*, 607 F. Supp. 2d 245, 246 (D. Mass. 2009)("When sought before the close of discovery, amendment is deemed futile when the proposed amended complaint would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

### III. ANALYSIS

#### A. The Claims Against the City, and Against the Mayor and the Police Commissioner in Their Official Capacities [4]

The proposed complaint asserts a section 1983 claim against the City for an unconstitutional custom, policy or practice of racial profiling, as well as new claims against the City, the Mayor and the Police Commissioner for failing to train, supervise, and discipline the City's police officers.  For the reasons discussed below, none of these claims makes it over the 12(b)(6) hurdle.

##### 1. Racial Profiling

With respect to what is really his principal claim, the plaintiff alleges the City has an "unlawful custom, policy, or practice of wrongfully . . . stopping, frisking, seizing,

---

[4] To the extent the plaintiff asserts claims against the Police Commissioner and the Mayor in their official capacities, the claims are construed as claims against the City.  *See Quarterman v. City of Springfield*, 716 F. Supp. 2d 67, 75 (D. Mass. 2009)("official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

6

oberv[ing] and interrogati[ng] [b]lack males." (Am. Compl. ¶ 68). To establish municipal liability, the plaintiff would need to show that "the municipality itself cause[d] the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). This means that he would need to demonstrate "both the existence of a policy or custom and a 'direct causal link' between that policy and the alleged constitutional deprivation." *Williams v. Bisceglia*, 115 F. Supp. 3d 184, 188 (D. Mass. 2015)(quoting *Harris*, 489 U.S. at 385). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011).

The plaintiff cannot make this showing because the proposed complaint fails to allege specific facts to show a custom, policy or practice of racial profiling, or that the policy or custom was "the moving force of the constitutional violation." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). To be sure, the proposed complaint, unlike the original, contains several additional paragraphs in this regard, presumably to address the court's prior comments and to support the plaintiff's allegation that the City has since 1989 practiced a policy of racial profiling and race based stops. More particularly, the amended complaint now refers to a 1989 memorandum issued by the then BPD Commissioner directing

7

all officers to "search on sight" all gang members and their associates. (Am. Compl. ¶ 14). From there, the plaintiff makes a hugely speculative leap and asserts that the memorandum is evidence of a de-facto policy of racial profiling, because African-American males are more likely to be gang members than non-minority males. (Id. at ¶¶ 15-19). From there, and presumably to connect the past to the present, the amended complaint cites to a 2014 statement released by the ACLU of Massachusetts noting that "Boston police officers are more likely to initiate police encounters with [b]lack people (Id. at ¶ 21)," and posits that this all means that the City (and Sergeant Keane and Officers Zanoli and Colby) were operating under a longstanding policy of racial profiling when the officers stopped him in April 2013.

In this court's view, such a strained and novel theory, unsupported by anything other than the plaintiff's own say-so, simply cannot form the basis for a valid 1983 claim based on racial profiling. To conclude otherwise would be to allow civil rights plaintiffs to bring an officer into the ambit of liability every time an officer stopped a person of color in the City. *See Chongris v. Bd. Of Appeals,* 811 F.2d 36, 37 (1st Cir. 1987)(In considering motions to dismiss courts should continue to "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets."). Accordingly, the court finds that the complaint fails

to allege sufficiently specific facts to show an unlawful City policy of racial profiling.

### 2. The Failure to Train

The proposed complaint also alleges that the City failed to properly train its officers on the "dangers" of racial profiling, and how to conduct a proper search and seizure. (Am. Compl. ¶ 33, 71-73, 77). The City can be liable for failing to train its officers "only if the failure to train amounts to *deliberate indifference* to the rights of the persons with whom the police came into contact, and is closely related to . . . the constitutional injury." *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998). Therefore, "[t]he complaint in order to state a valid claim must allege that the City: (1) knew when it hired the officer that the risk of [a constitutional violation] was obvious; or (2) later learned of the risk but took no steps to provide adequate training." *Miller v. City of Boston*, 586 F. Supp. 2d 5, 8 (D. Mass. 2008).

The complaint fails to meet this standard because it does not allege specific facts to show that the City was deliberately indifferent to the plaintiff's rights. "In order to prove that a municipality acted with deliberate indifference (or failed to act at all), a plaintiff must show that the municipality disregarded a known or obvious risk, which is ordinarily demonstrated by adducing a pattern of similar constitutional violations by

9

untrained employees." *Sonia v. Town of Brookline*, 914 F. Supp. 2d 36, 44 (D. Mass. 2012). The plaintiff alleges that the City was aware of the unconstitutional conduct of its police officers based on complaints from other citizens (Am. Compl. ¶ 71), but notably does not allege what the nature of those complaints were, that is, whether they were related to alleged practices of racial profiling, or which BPD officers were implicated. On the contrary, the proposed complaint implicates only the single incident involving Officers Zanoli and Colby and fails to allege any facts to suggest that conduct such as theirs was pervasive or widespread within the BPD. "[I]n most cases a claim of failure to train based on a single incident will not succeed." *Id.* (*citing Calvi v. Knox County*, 470 F.3d 422, 429 (1st Cir. 2006)).

    3. The Failure to Supervise

The proposed complaint also alleges that the City failed to supervise its police officers. A city can be liable for the failure to supervise its employees where the unconstitutional behavior of the employees resulted from the City's "encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 176-77 (1st. Cir. 2008). To prevail, a plaintiff must have either direct evidence of inadequate supervision or evidence of a number of incidents involving the same type of inappropriate behavior by employees such that a jury could reasonably infer that

10

the incidents arose from a failure to supervise. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-24 (1985) (holding that it was reversible error to allow the jury to infer inadequate training or supervision where the plaintiff only introduced evidence of a single, isolated incident of excessive force). At the pleading stage, the plaintiff must allege facts sufficient to allow an inference that the allegedly unlawful stop and arrest by Officers Zanoli and Colby was not an isolated incident, but was rather the product of a custom and practice of failing to supervise police officers. *Santiago v. Bloise*, 741 F. Supp. 2d 357, 363 (D. Mass. 2010)(holding that factual allegations regarding one specific incident "combined with a mere reference to a custom of failure to train and supervise" was insufficient to state a claim).

The proposed complaint fails to meet this standard. As in the original complaint, the proposed complaint alludes only to the incident involving Officers Zanoli and Colby and fails to allege specific facts to show a pattern of similar incidents within the BPD from which a jury could infer a widespread pattern of a failure to supervise.

### 4. The Failure to Discipline

The plaintiff also alleges that the City failed to discipline its police officers for their alleged unconstitutional conduct. (Am. Compl. ¶ 87). "In order to establish liability under a failure to discipline theory, the plaintiff must show a persistent

11

failure to discipline that demonstrates the existence of a custom or policy of Boston." *Barker v. City of Boston*, 795 F. Supp. 2d 117, 124 (D. Mass. 2011). Moreover, "this failure must be so extreme and pervasive that it amounts to a deliberate indifference to the rights of persons with whom the officers come into contact." *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 293 (D. Mass. 2013).

Here, the only specific incidence referred to in the proposed complaint regarding the City's failure to discipline is the incident involving Officers Zanoli and Colby. Even assuming that they engaged in unconstitutional conduct which the City thereafter failed to discipline, that is insufficient to state a valid claim. *See Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989)("we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*"); *Barker*, 795 F. Supp. 2d at 124 ("A single failure to discipline is not sufficient to establish municipal liability under *Monell*.").

In sum, the proposed complaint fails to state a valid section 1983 claim against the City or against the Mayor and Police Commissioner in their official capacities. Leave to amend to include these claims therefore should be denied.

B. **The Claims Against Mayor Walsh and Commissioner Evans in their Individual Capacities**

To the extent the proposed complaint asserts claims against the Mayor and the Police Commissioner in their individual capacities, they also fail to state a valid claim for relief.  A state official "may be found liable [under section 1983] only on the basis of [his] own acts or omissions."  *Figueroa v. Aponte-Rogue*, 864 F.2d 947, 953 (1st Cir. 1989).  However, in such cases, "qualified immunity will protect a public official from personal liability if that official acted in good faith."  *Stratton v. City of Boston,* 731 F. Supp. 42, 48 (D. Mass. 1989)(q*uoting Brandon v. Holt*, 469 U.S. 464, 472 (1985)).  The "good faith standard" shields the officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800 818 (1982).  "In order to defeat the defense of qualified immunity, the plaintiff, before commencing the suit, must be prepared with a prima facie case of defendant's knowledge of impropriety, actual or constructive."  *Stratton*, 731 F. Supp. at 49 (*quoting Krohn v. United States*, 742 F.2d 24, 31 (1st Cir. 1984)).  "The salient question is whether the state of the law at the time gave a defendant clear notice that what he was doing was unconstitutional."  *Diaz-Bigio v. Santini,* 652 F.3d 45, 50 (1st Cir. 2011).

Here, even assuming *arguendo* that the Mayor and the Police Commissioner committed some act or omission, the plaintiff has alleged no facts to show that either official personally and knowingly violated the plaintiff's constitutional rights. "Although pro se complaints are held to a less stringent standard . . . there must be some allegation of facts that would support a determination of a lack of good faith in the objective sense." *Id.* The complaint thus fails to state a claim against the officials in their individual capacities.

### C. The § 1983 Claim(s) Against Sergeant Keane

The proposed complaint appears to allege that Sergeant Keane knew once he reviewed Officer Zanoli and Colby's police report that they had stopped the plaintiff without cause, but failed to do anything about it because the officers' conduct was consistent with the City's practice of racial profiling. The court finds that any section 1983 claim (or claims) asserted against Sergeant Keane based on these allegations fails to survive Rule 12(b)(6) scrutiny, for two reasons.

First, the complaint as framed alleges essentially a theory of vicarious liability, that is, it alleges that Sergeant Keane as the officers' supervisor is liable for their unlawful conduct, a tort concept that has no application in a section 1983 context. On the contrary, it is well established that a supervisor can only be held liable under section 1983 "when their own action or

14

inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Guzman v. Cranston*, 812 F.2d 24, 26 (1st Cir. 1987). "This encompasses situations where a supervisor formulates a policy or engages in a practice that leads to a civil rights violation committed by another, and where he has notice of the conditions likely to lead to a deprivation of constitutional rights." *Abernathy v. Dewey*, 196 F. Supp. 3d 157, 167 (D. Mass. 2016).

Second, and in that regard, to the extent the plaintiff contends that Sergeant Keane failed to properly supervise Officers Zanoli and Colby, and that the failure to supervise them led to the plaintiff's injury, the complaint still does not allege that Sergeant Keane knew or should have known of an ongoing problem with Officers Zanoli and Colby because of widespread civil rights violations similar to that allegedly inflicted upon the plaintiff. *See Rodriguez-Vasquez v. Clinton-Rodriguez,* 160 F. Supp. 2d 204, 211 (D.P.R. 2001). True, the plaintiff does allege that Sergeant Keane as the shift supervisor was "responsible for all acts done in furtherance of the department's official customs or policies," and "allow[ed] for his officers to stop, frisk, search . . .interrogate and observe the actions of African Americans, and arrest them at a higher rate [than Caucasians.]" But even assuming *arguendo* that this language is read to allege that Sergeant Keane

15

knew beforehand that Officers Zanoli and Colby were prone to engage in such behavior, the plaintiff cannot make this showing because the proposed complaint as noted above fails to allege specific facts to show a custom, policy or practice of racial profiling, or that the policy or custom was "the moving force of the constitutional violation." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

In short, the complaint fails to state a valid 1983 claim against Sergeant Keane and leave to amend to include it therefore should not be granted.[5]

**IV. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Motion to Amend Complaint (Dkt. No. 45) be ALLOWED IN PART, and DENIED IN PART. Specifically, the motion should be ALLOWED with respect to defendants Officer Zanoli and Colby, but should be DENIED with respect to the City, Sergeant Keane, Commissioner Evans and Mayor Walsh.[6]

---

[5] Finally, the plaintiff alleges in Count 3 that the City, Mayor and Police Commissioner violated his Fourth and Fourteenth Amendment rights by allowing Officers Zanoli and Colby to violate the plaintiff's Fourth Amendment rights. This claim is duplicative of the claims already discussed and fails for the same reasons noted.

[6] The parties are hereby advised that under Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this

```
                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.
```

DATED:  March 2, 2018

---

Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983).