UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BARRY SPENCER II,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, OFFICER ZANOLI,<br>OFFICER COLBY, and SUPERVISOR<br>DANIEL C. KEANE<br><br>    Defendants. | No. 15-cv-10634-IT |

**REPORT AND RECOMMENDATION ON DEFENDANT OFFICER CHRISTOPHER COLBY'S MOTION TO DISMISS (Dkt. No. 73)**

CABELL, U.S.M.J.

## I.  INTRODUCTION

Barry Spencer contends that Boston Police Department (BPD) Officers Joseph Zanoli and Christopher Colby stopped, searched and arrested him without cause in the course of a street encounter. Spencer at one point sought to assert several federal and state statutory and common law claims against the officers and several other defendants, including their shift supervisor, the BPD Commissioner, the mayor of Boston and the city of Boston itself. Following protracted litigation, however, the complaint presently

alleges a claim under 42 U.S.C. §1983 against Officers Zanoli and Colby for violation of the plaintiff's Fourth Amendment rights.[1]

Pending before the court is Officer Colby's motion to dismiss. His counsel, the City of Boston Law Department (the City), previously represented Officer Zanoli as well but notes that Officer Zanoli passed away in 2015, and contends that the City has no authority to represent his estate.  It is not entirely clear why counsel has taken this position now, particularly where the record reflects that the City actively represented Officer Zanoli well into 2017, but the issue is academic.  Based on submissions which have not been disputed, Officer Zanoli did in fact pass away in May 2015, about two months after this lawsuit was filed.  (Dkt. Nos. 1, 72).  In instances where a party to a lawsuit dies, a court upon motion "may order substitution of the proper party" provided the motion is made within 90 days of service of a statement noting the death.  If the motion is not made within 90 days of service, "the action . . . against the decedent **_must_** be dismissed."  Fed. R. Civ. P. 25(a)(1) (emphasis added).  Here, a suggestion of Officer Zanoli's death and an accompanying death certificate were filed with the court and served on the plaintiff on May 23, 2018. As the plaintiff failed to move within 90 days of receiving the notice to substitute another in Officer Zanoli's place, the claims

---

[1] The operative complaint is the proposed amended complaint attached to the plaintiff's motion for leave to amend (Dkt. No. 45-1).

against Officer Zanoli must be dismissed. *See e.g., Falls v. Novartis Pharm. Corp.*, No. 3:13CV0270(JBA), 2014 WL 3810246, at *5 (D. Conn. Aug. 1, 2014) (granting motion to dismiss after failure to file timely motion for substitution).

Focusing then on Officer Colby, the court finds as explained below that the complaint fails to state a viable claim against him for violation of Spencer's civil rights.  The court thus recommends that the motion to dismiss be granted and that the complaint be dismissed in its entirety.

## II.   RELEVANT BACKGROUND

According to the complaint, Officers Zanoli and Colby stopped, searched, and arrested Spencer during an encounter that took place on the evening of April 15, 2013, in a high crime area of Boston.  It was not the first such encounter; Officer Zanoli had "stopped, frisked, searched, [and] interrogated" Spencer on at least three occasions the previous month.  As a result of those encounters, Officer Zanoli knew that Spencer was a drug user.

As the event unfolded, Officers Zanoli and Colby were in their police vehicle when they saw Spencer speaking to a woman named Tammy Lagrange.  They saw that Spencer was holding money in his hand.  The officers exited their vehicle and walked towards the duo.  As they did so the officers reportedly heard the plaintiff say "Oh f**k."

Officer Colby spoke with Lagrange while Officer Zanoli spoke with Spencer.  Officer Zanoli asked the plaintiff among other things, "Do you have anything on you?" Spencer replied, "I don't think so."  Neither officer observed a weapon or suggestive bulge in the plaintiff's clothing.  Spencer did not make any furtive gestures and did not reach for his pockets.

Officer Zanoli nonetheless proceeded to conduct a pat-frisk search of Spencer.  He felt a hard object in Spencer's shirt pocket that turned out to be a boxcutter, and also felt and discovered a "small hard object in his shirt pocket."  The officers apparently suspected the object to be cocaine (given that Spencer ultimately was charged with "Possession of Class B").

Apparently just after this discovery, Officer Colby searched Spencer further and found "two additional small objects" also suspected to be cocaine.

Spencer was at some point placed under arrest.

### III.   LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556).

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm, Inc*., 637 F.3d 1, 5 (1st Cir. 2011)). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (*quoting Twombly,* 550 U.S. at 555). Simply put, the Court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

## IV. ANALYSIS

Parsed, the complaint identifies four distinct acts which could serve as a basis for a Fourth Amendment civil rights claim. The complaint alleges first that the officers had no basis to stop the plaintiff. It alleges next that Officer Zanoli had no basis to pat-frisk the plaintiff, and that Officer Colby had no basis to

separately search him thereafter.  Finally, it alleges that the officers lacked probable cause to arrest the plaintiff.

Officer Colby argues that the officers were entitled to stop the plaintiff because they had a reasonable and articulable suspicion that he was engaged in a drug transaction.  He argues that Officer Zanoli was entitled to pat-frisk the plaintiff because the officers had a reasonable suspicion that the plaintiff was armed.  He argues that he thereafter was entitled to search the plaintiff because the suspected drugs found by Officer Zanoli gave the officers both probable cause to arrest the plaintiff and the right to conduct a search incident to the arrest.

The court takes exception with one aspect of the defendant's reasoning but does agree overall that the facts as alleged in the complaint do not state a valid claim against Officer Colby.

With respect to the officers' initial stop of the plaintiff, it is well established that a police officer may conduct an investigatory stop if he has a reasonable suspicion that an individual has engaged in criminal conduct.  *See United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also United States v. Wright*, 582 F.3d 199, 205 (1st Cir. 2009).  Determining the validity of an investigatory stop, known as a *Terry* stop, requires a two-step inquiry, including: (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the

circumstances which justified the interference in the first place." *Schubert v. City of Springfield*, 589 F.3d 496, 501 (1st Cir. 2009) (quoting *Terry*, 392 U.S. at 20).

The justification required for a *Terry* stop is reasonable suspicion. *See Klaucke v. Daly*, 595 F.3d 20, 24 (1st Cir. 2010); *Schubert*, 589 F.3d at 501. The officer must have "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Wright*, 582 F.3d at 205 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). In other words, there must exist "specific and articulable facts" upon which a reasonable officer would believe the individual was engaged in criminal activity. *See Klaucke*, 595 F.3d at 24; *Schubert*, 589 F.3d at 501; *United States v. Espinoza*, 490 F.3d 41, 47 (1st Cir. 2007).

The court finds here that the facts as alleged supported an investigatory stop. The complaint alleges that the officers (or Officer Zanoli at least) knew the plaintiff was a drug user, saw that he was interacting with someone in a high crime area at night, with money in his hand, and heard him utter a profanity when the officers approached. Even assuming these facts could just as easily portray a benign encounter between Spencer and Lagrange, they also supported a reasonable suspicion that Spencer might be purchasing drugs from Lagrange. The court finds therefore that the officers did not violate the plaintiff's civil rights when

they approached him to investigate further.  *See e.g., Wright*, 582 F.3d at 212 ("[W]e have upheld *Terry* stops where the combination of 'innocuous' facts culminates in reasonable suspicion"); *United States v. Soares*, 521 F.3d 117, 120-21 (1st Cir. 2008) (time of night, high-crime area, suspect's unusual behavior and use of profanity combined to yield reasonable suspicion); *United States v. Stanley*, 915 F.2d 54, 56 (1st Cir. 1990) (time of night, high-crime location, and unusual conduct combined to yield reasonable suspicion).

Turning then to the second prong of *Terry,* and whether the officers' actions were reasonably related in scope to their concerns that Spencer might be involved in a drug purchase, the defendant argues that Officer Zanoli was entitled to conduct a pat-frisk search because he had a reasonable suspicion that Spencer was armed.   This is where the court takes issue with the defendant's argument.

The defendant cites First Circuit precedent noting that there is a link between drug dealing and firearms, and that therefore "an individual stopped under reasonable suspicion of drug trafficking often suggests to the officer that he might be armed." *See United States v. Acosta,* 67 F.3d 334, 339 (1st Cir. 1995).   The defendant's reliance on such caselaw is misplaced, however, because the complaint concedes only that Spencer was a drug user, not a drug dealer.   In the court's view, the facts as alleged in

the complaint supported a suspicion that Spencer might be buying drugs, but by contrast provided no real basis to conclude that he was engaged in drug trafficking.  To the extent the defendant seeks to conflate the two, that is, to argue that one who buys drugs in a street transaction is necessarily engaged in drug trafficking activities, the cases cited do not go that far and this court is not prepared to summarily endorse the proposition.

To be sure, the defendant argues that Spencer's response" of "I don't know" when asked if he had "anything on you" was "evasive" and "implausible," and urges that it "enhanced" the suspicion that he might be armed.  Without doubt, the plaintiff's response was evasive and did him no favors.  That being said, the defendant seeks to wring too much from the statement.  Even assuming Spencer's failure to affirmatively declare he had nothing in his possession could reasonably give rise to a concern that he in fact had something, it does not necessarily follow that that "something" might be a weapon as opposed to drugs.

Moreover, the pertinent issue at the motion to dismiss stage is not whether the facts could on balance plausibly support an inference that Spencer might be armed, but whether the complaint as framed states a plausible claim that Officer Zanoli lacked a legitimate basis to believe that Spencer was armed, and thus lacked a basis to conduct a pat-frisk search.  Where the complaint alleges that Spencer was not ostensibly engaged in criminal activity, did

not flee when the officers approached, did not have any suggestive bulges in his clothing and did not make any furtive gestures, it does in the court's view state a claim that survives 12(b)(6) scrutiny.  The court therefore cannot at this juncture find that Spencer's civil rights were not violated when Officer Zanoli conducted a pat-frisk search.

But, this does not mean that the complaint states a valid claim against Officer Colby based on Officer Zanoli's pat-frisk search.  On the contrary, Officer Colby cannot be held liable for Officer Zanoli's conduct where he did not conduct the pat-frisk search himself or direct or supervise Officer Zanoli's actions. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (officer can only be liable if he was an integral participant and had "some fundamental involvement in the conduct that allegedly cause the violation."); *McCoy v. Goord*, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003) (citing *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d. Cir. 2001)) (personal involvement requirement may be satisfied by showing defendant was grossly negligent in supervising subordinates who committed wrongful acts.). Consequently, the court finds that the complaint fails to state a claim against Officer Colby for Officer Zanoli's pat-frisk search, even assuming *arguendo* that Officer Zanoli had no basis to conduct the search.

Turning then to the search Officer Colby conducted thereafter, the court finds that the search did not violate Spencer's rights because the officers had probable cause to arrest Spencer and to conduct a search incident to the arrest.

To begin, the Fourth Amendment generally requires police officers to obtain a warrant before conducting a search. *See United States v. Paneto*, 661 F.3d 709, 713 (1st Cir. 2011). There are exceptions to the warrant rule, however, including one for searches incident to an arrest. *See United States v. Jones*, 187 F.3d 210, 219 (1st Cir. 1999). Put more simply, when the police have probable cause to lawfully arrest a person, they also may search the person incident to that arrest, and it does not matter whether the search is done before or after the person is formally placed under arrest. *See United States v. Wurie*, 728 F.3d 1, 3 (1st Cir. 2013) (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)); *c.f. Rawlings v. Kentucky*, 448 U.S. 98, 110-11 (1980) (upholding search incident to arrest where probable cause was established prior to the challenged search and formal arrest quickly followed); *United States v. Bizier*, 111 F.3d 214, 218-19 (1st Cir. 1997).

Applied here, the complaint easily establishes that the officers had probable cause to arrest Spencer by the time Officer Colby conducted his search. Specifically, the complaint alleges that prior to Officer Colby's search, Officer Zanoli pat-frisked Spencer and discovered suspected cocaine in the plaintiff's shirt

pocket.  Because possession of cocaine constitutes a crime under Massachusetts law, see M.G.L. c. 94C §§ 32-32D, the officers unquestionably had probable cause to believe that the plaintiff had committed a crime, and that would be true regardless of whether Officer Zanoli's pat-frisk search was later found to be unjustified.  *See e.g.*, *Townes v. City of New York*, 176 F.3d 138, 149 (2d. Cir. 1999) (officers could rely upon evidence obtained during search to establish probable cause to arrest suspect even where search was later determined to have been unjustified). Accordingly, it follows that the officers were wholly entitled to arrest the plaintiff and to perform an incidental search.

## V.  CONCLUSION

For the foregoing reasons, the court recommends that Defendant Colby's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim (Dkt. No. 73) be GRANTED.  The court also recommends that all claims against Officer Zanoli be DISMISSED, and that the complaint be dismissed in its entirety.[2]

---

[2] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED:  January 9, 2019